STATE of Tennessee, Appellee,

v.

Arnold MILLER, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 13, 1981.

J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, William A. Buckley, Jr., Asst. Dist. Atty. Gen., Athens, for appellee.

Edwin C. Harris, Madisonville, for appellant.

## OPINION

DAUGHTREY, Judge.

Arnold Miller is an inmate of the state correctional system, serving a sentence of not less nor more than 10 years for simple robbery. His conviction resulted from the entry of a guilty plea, which he has now attacked as being involuntarily entered. The trial judge denied his habeas corpus petition, treating it as a petition for post-conviction relief. Miller appeals this denial, alleging that his guilty plea was involuntary, both because it was coerced and because it was not entered in conformity with Rule 11, Tennessee Rules of Criminal Procedure.

The allegation of coercion is based on the fact that Arnold Miller and his brother, Ray Miller, were jointly indicted for armed robbery, and in addition Ray Miller was charged with two counts of assault with intent to commit first degree murder. The State offered the two brothers a "package deal": Ray Miller would be allowed to plead guilty and serve three concurrent 10 year determinate sentences, but only if Arnold Miller would also plead guilty and accept a 10 year indeterminate sentence, thus saving the State the necessity of going to trial. The record shows conclusively that Arnold Miller did not want to plead guilty, but rather wanted to go to trial. Because his brother, his family, and the lawyers involved in the case all thought Ray Miller would probably receive a life sentence if he went to trial, Ray Miller subjected his brother, Arnold, to extreme pressure to change his mind and accept the State's offer. At the evidentiary hearing, when the assistant district attorney asked Miller's

former trial counsel if Miller had been "under any more pressure than anybody else who pleads guilty," the trial judge intervened:

> Yes, he was. Let me answer that, General. He was because of the fact of his brother. Now, you can't make a situation that you could compare to his unless you put a brother in it. That puts a different aspect on it. I was satisfied at the time and I'm still satisfied that he was under more pressure than the ordinary fellow because of his brother and that's what put him under pressure. Ray was begging him to take it. I heard Ray right out there, I don't know what they were doing out there, but out there by that radiator but Ray asked him to take it. I don't know what we were doing out there but at one time or another it was all over the hall we were talking about it, but Ray was begging him to take it and there was that kind of pressure and what that means I don't know, but there was pressure. Just to be fair with everybody concerned he was under more pressure than the ordinary defendant was.

The trial judge ruled, however, that the pressure brought to bear on Miller was not sufficient to render his plea involuntary.

Because we hold that the trial court failed to comply with the requirements of Rule 11 and that Arnold Miller's guilty plea and conviction must be set aside for that reason, we find it unnecessary to determine whether the facts outlined above are sufficient to establish coercion of the petitioner's guilty plea. However, we do note that because the trial judge was personally aware of the pressure being exerted against Arnold Miller to plead guilty, compliance with the dictates of Rule 11 was of particular importance in the acceptance of Miller's plea. And yet the record shows that the trial court failed to follow the procedure set out in Rule 11.

■ In the transcript of the submission hearing there is, for example, no ascertainment that the plea is being voluntarily entered, in violation of Rule 11(d); no explanation of the nature of the charge and the potential minimum and maximum sentences (although the trial judge did tell Miller the actual sentence he would receive), in violation of Rule 11(c)(1); no advice by the trial court concerning Miller's right to trial by jury, with the assistance of counsel and the right to confront and cross-examine the witnesses against him, nor advice concerning his right not to incriminate himself, in violation of Rule 11(c)(3); no explanation that his guilty plea would constitute a waiver of his right to trial, in violation of Rule 11(c)(4); and no explanation that any statements made by Miller in response to questioning might later be used against him in a prosecution for perjury, in violation of Rule 11(c)(5). The last matter is particularly pertinent because Arnold Miller made an incriminating statement in response to questioning by the trial court during the submission hearing. Finally, there appears to be only marginal compliance with Rule 11(f), which requires that the trial judge determine the accuracy of the defendant's plea by inquiring into the factual bases for the plea. The only statement of fact in the record is the defendant's own incriminating statement, made during the course of the hearing.

The State argues on appeal that any Rule 11 violations committed in this case are "technical" in nature. However, under the language of the Rule and the mandate of *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), it is clear that the record is not merely technically deficient. The law requires that before a guilty plea may be accepted, the trial judge "must address the defendant personally in open court and inform him of, and determine that he understands..." the points discussed above, as well as others outlined in the Rule. *State v. Mackey, supra*, 553 S.W.2d at 341; Rule 11, Tennessee Rules of Criminal Procedure.

■ The *Mackey* requirements and the Rules of Criminal Procedure were promulgated by the Tennessee Supreme Court pursuant to the Court's supervisory powers. *State v. Mackey, supra*, 553 S.W.2d at 340–41. Hence, violations of Rule 11 are not necessarily constitutional in nature and sub-

ject to collateral attack. But under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), a guilty plea must be voluntarily, understandingly, and intelligently entered in order to withstand constitutional challenge. *Boykin* requires at minimum that a criminal defendant be warned of his constitutional rights to trial by jury, to confrontation, and to protection against self-incrimination, in order to establish affirmatively that his plea was voluntary and intelligent. Applying the constitutional rule announced in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the *Boykin* court noted that a waiver of these fundamental rights is not valid unless it represents an "intentional relinquishment or abandonment of a known right or privilege," and held that such a waiver cannot be presumed from a silent record. *Boykin v. Alabama, supra*, 395 U.S. at 243, 89 S.Ct. at 1712, quoting from *Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. at 1023. Moreover, in the absence of an affirmative showing on the record, both *Boykin* and *Mackey* recognize the right of the reviewing court to grant relief for plain error. *Boykin v. Alabama, supra*, 395 U.S. at 243, 89 S.Ct. at 1712; *State v. Mackey, supra*, 553 S.W.2d at 340.

We hold that this case is controlled by *Boykin* and *Mackey*. Accordingly, we reverse the judgment of the trial court and remand the case with instructions to set aside the defendant's plea of guilty and the resulting judgment of conviction, and for further proceedings consistent with this opinion.

BYERS and CORNELIUS, JJ., concur.